UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

                                      :

UNITED STATES OF AMERICA

                                        :

        - v. -

                                        :    S2 24 Cr. 497 (DLC)

BIANNEURY PENA
  a/k/a "Charly,"

                                        :

                    Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## THE GOVERNMENT'S MOTIONS *IN LIMINE*

 

 

                                                        JAY CLAYTON
                                                         United States Attorney
                                                         Southern District of New York

Ashley C. Nicolas
Brandon D. Harper
Ryan W. Allison
Assistant United States Attorneys
      *- Of Counsel -*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................... 1

PROCEDURAL BACKGROUND ............................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................ 1

ARGUMENT ................................................................................................................................. 5

I.    Documents Maintained in the Defendant's A-File are Admissible ........................................ 5

    A. Applicable Law ................................................................................................................ 6

    1.  The Confrontation Clause ............................................................................................... 6

    2.  The Public Records Exception ........................................................................................ 6

    3.  Admissions of a Party Opponent and Adoptive Admissions ........................................ 9

    B. Discussion ..................................................................................................................... 10

II.   Evidence and Argument Concerning Personal Characteristics, Current Immigration
    Policy, and Punishment Should Be Precluded ................................................................... 12

    CONCLUSION ....................................................................................................................... 15

## PRELIMINARY STATEMENT

In advance of the trial in the above-captioned case, which is scheduled to begin on July 15, 2025, the Government respectfully submits this memorandum of law to request rulings on certain evidentiary issues *in limine*.  Specifically, the Government seeks the following rulings:

1. Immigration documents maintained in the defendant's United States Citizenship and Immigration Services immigration file, or "A-file," are admissible

2. Evidence or argument concerning the defendant's personal characteristics and circumstances unrelated to guilt, immigration enforcement policies or priorities, or possible punishment, should be precluded.

For the reasons described herein, each of these rulings is grounded in the proper application of the Federal Rules of Evidence and well-established precedents applying those rules.

## PROCEDURAL BACKGROUND

The operative indictment, S2 24 Cr. 497 (the "Indictment"), charges the defendant in three counts arising from his participation in a scheme to transport and distribute firearms and narcotics between New York and North Carolina. The three counts against the defendant are as follows: (i) a violation of 18 U.S.C. § 933 (conspiracy to commit gun trafficking); (ii) a violation of 18 U.S.C. § 922(g)(5) (alien in possession of a firearm) and (iii) a violation of 21 U.S.C. §§ 841 and 846 (conspiracy to distribute cocaine).

## FACTUAL BACKGROUND

As more fully described herein, in or about May 2024, the defendant began participating in a scheme to transport and distribute firearms and narcotics between New York and North Carolina (the "Scheme"). Prior to his entry into the conspiracy, the defendant entered the United States unlawfully and was, at all relevant times during the charged conduct, illegally in the United States. At trial, the Government expects to prove its case through, among other potential categories of evidence:  (i) testimony of law enforcement officers who participated in the surveillance of the

1

defendant and his co-conspirators, including the handler of the narcotics-detection canine described above; (ii) testimony of law enforcement officers who participated in the defendant's arrest and the seizure of firearms; (iii) photographs and videos from cellphones belonging to the defendant and other members of the conspiracy, which contain, among other things, depictions of firearms and narcotics; (iv) records of cellphone communications between the defendant and co-conspirators regarding, among other things, firearms and narcotics trafficking[1]; (v) testimony of an expert witness in narcotics trafficking; (vi) testimony of an expert witness in cell-site analysis; (viii) testimony of an expert witness in firearms; and (viii) immigration records from the defendant's Alien-file ("A-file") reflecting the defendant's non-citizenship.

At trial, the Government expects to show that, when the defendant began participating in the Scheme, he was in the United States unlawfully, having entered the country by crossing the border near Tecate, California, at a place other than a designated border crossing location. The defendant was arrested in connection with his unlawful entry on or about April 29, 2024 and released on his own recognizance on April 30, 2024, after having been advised, among other things, that he was (i) an alien present in the United States who had not been admitted or paroled; (ii) not a citizen or national of the United States; (iii) a native of the Dominican Republic and a citizen of the Dominican Republic; and (iv) not admitted or paroled after inspection. At the time

---

[1] In the Government's view, all of the statements that would be offered at trial during the Government's case-in-chief are relevant to the charges contained in the Superseding Indictment, are not hearsay because they are not statements being offered to prove the truth of the matter asserted under Federal Rule of Evidence 801, or are admissible against the defendant as statements by a party opponent under Federal Rule of Evidence 801(d)(2)(A), statements by a co-conspirator under Federal Rule of Evidence 801(d)(2)(E), or as statements against penal interest under Federal Rule of Evidence 804(b)(3).

he was released, the defendant was presented with a notice to appear which required him to present himself at 26 Federal Plaza, New York, New York, in September 2025.

Within a month of his release into the United States, the defendant engaged in at least three trips between New York and North Carolina for the purpose of transporting narcotics and firearms in furtherance of the Scheme. The defendant took these trips between North Carolina and New York on or about May 9, 2024 ("Trip 1"), between on or about May 29 and 30, 2024 ("Trip 2"), and between on or about June 5 and June 7, 2024 ("Trip 3"). The defendant's co-conspirator — ABEL ROSARIO — accompanied the defendant during at least Trips 1 and 3. A third co-conspirator, identified as RANDY DIAZ, a/k/a "Machete," accompanied ROSARIO and the defendant for Trip 3.

At trial, the Government expects to show that, over the course of the Scheme, members of the conspiracy communicated with one another and with customers through text messages and voice notes. For example, on or about May 28, 2024 (immediately prior to Trip 2), ROSARIO sent a video of what appears to be a brick of cocaine to a co-conspirator ("CC-1"). In the video, an individual can be seen cutting the brick open and a voice can be heard referring to the cocaine as the "Queen of Colombia." The same day, ROSARIO discussed firearms with CC-1, describing the availability and prices of certain firearms, including Glocks, a "r15" and an "Uzi." The next day, on or about May 29, 2024, around the start of Trip 2, a co-conspirator ("CC-2") sent a photograph of firearms to the defendant. The defendant sent that photograph to ROSARIO. The firearms in the photograph match the description of the firearms ROSARIO had given to CC-2. At the end of Trip 2, ROSARIO asked the defendant for his full name and that of "CC-2," to "receive money." The defendant then obtained CC-2's full name from CC-2 and provided his own name as

well as that of CC-2 to ROSARIO. Shortly thereafter, ROSARIO sent the defendant a video depicting an individual, ostensibly ROSARIO, fanning out a bulk quantity of cash.

The Government also expects to show that, during his participation in the Scheme, the defendant boasted about his role to others. For example, on or about May 15, 2024, between Trips 1 and 2, the defendant was discussing his activities with another person ("Individual-1") and made reference to "Chapo Guzman." Individual-1 responded by telling the defendant, "You're going to become a new Chapo Guzman now. A new Pablo Escobar." Later, on or about May 30, 2024 (after Trip 2), the defendant told another person ("Individual-2"), "I have a nice couple bucks from when I went to take the drugs over to Carolina" and that he was "going to keep that money here to invest it further to buy work and take it to Carolina, to the black people." During Trip 3, on or about June 6, 2024, the defendant told a co-conspirator ("CC-2"), "I am king of the weapons right now, my man. I have weapons I don't even know what to do with them."

The Government further expects to show that during the investigation, including in early May, ROSARIO and the defendant were seen by law enforcement (i) exiting an interstate passenger bus in Chinatown in Manhattan on or about May 9, 2024 (at the end of Trip 2) and (ii) frequenting an apartment in Newark, New Jersey outside of which law enforcement recovered a bag that was later sniffed by a narcotics-detection canine that detected the odor of narcotics.

On June 7, 2024 (at the end of Trip 3), the defendant was arrested in Chinatown after departing an interstate passenger bus from North Carolina with ROSARIO and DIAZ. ROSARIO was carrying a bag containing a handgun and three ammunition magazines. The defendant was in possession of a separate bag containing an Aero Precision model M4E1 firearm, serial number M4 0069346, with a magazine. Prior to the search of the bags, both bags were sniffed by a narcotics-detection canine that detected the odor of narcotics.  The same day, the Government sought a

4

criminal complaint charging ROSARIO and the defendant with, among other things, a firearms offense. The complaint was only authorized as to ROSARIO.[2] In early August 2024, ROSARIO was later charged by indictment in 24 Cr. 497. One week later, on or about August 28, 2024, the grand jury returned a superseding indictment charging PENA with conspiracy to commit gun trafficking in violation of Title 18, United States Code, Section 933. On or about May 29, 2025, the grand jury returned the operative S2 indictment, which added firearms possession and drug trafficking charges against the defendant.

The Government notes that the parties have conferred about the Government's anticipated proof at trial. The motions to admit evidence set forth herein concern disputes that the parties have not otherwise resolved, or may not resolve, by stipulation or otherwise.

## ARGUMENT

### I.    Documents Maintained in the Defendant's A-File are Admissible

The Government seeks to offer certain immigration documents maintained in the defendant's A-file, which bear directly on the elements of the charged offense. In particular, the Government currently intends to introduce Form I-213 ("Record of Deportable/Inadmissible Alien") as well as the Notice to Appear served on the defendant at the time of his release into the United States.[3] As set forth below, courts have uniformly held that such documents, which are routinely prepared in connection with immigration matters and maintained by the United States

---

[2] The defense has represented to the Government that it does not intend to offer any evidence or make arguments about the fact that the defendant was not charged in the criminal complaint.

[3] As trial preparation continues, the Government may mark additional documents contained within the defendant's A-file as potential trial exhibits, and to the extent that the parties are unable to come to an agreement regarding the authenticity and admissibility of those proposed exhibits, the Government will alert the Court to the issue as promptly as possible.

Customs and Immigration Service ("USCIS") in an individual's A-file, are admissible as public records under Rule 803(8) and may be admitted to prove the elements of immigration-related offenses at a criminal trial. In addition, certain records that the Government seeks to offer from the A-file are also independently admissible as statements of a party opponent or adoptive admissions under Rule 801(d)(2)(A) and 801(d)(2)(B), respectively.

### A. Applicable Law

#### 1. The Confrontation Clause

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. In *Crawford v. Washington*, the Supreme Court held that a defendant's confrontation right is violated when the prosecution introduces "testimonial statements of a witness who did not appear at trial," unless that witness "was unavailable to testify, and the defendant had a prior opportunity for cross-examination." 541 U.S. 36, 53-54 (2004). To qualify as "testimonial" under *Crawford*, "a statement must have a primary purpose of establishing or proving past events potentially relevant to later criminal prosecution." *Bullcoming v. New Mexico*, 564 U.S. 647, 659 n.6 (2011). Thus, business and public records are generally not testimonial because they are "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009).

#### 2. The Public Records Exception

Federal Rule of Evidence 803(8) provides that public records "are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness." Fed. R. Evid. 803(8). A "record or statement of a public office" qualifies under this exception if: "(A) it sets out: (i) the

office's activities; (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." *Id*. As the Second Circuit has recognized, public records are those "made by public officials in the ordinary course of their duties, and accordingly evidence strong indicia of reliability. This is so because public officials are presumed to perform their duties properly and generally lack a motive to falsify information." *Felzcerek v. I.N.S.*, 75 F.3d 112, 116 (2d Cir. 1996). Indeed, "a written public record is often more accurate than the potentially hazy memory of a public official who must deal with hundreds of instances of similar conduct." *Id*. (citing *Wong Wing Foo v. McGrath*, 196 F.2d 120, 123 (9th Cir. 1952)).

Rule 803(8)(A)(ii)'s prohibition against public records of "matter[s] observed by law-enforcement personnel" in criminal cases does not prevent the admission of all reports prepared by law enforcement officers. Instead, courts distinguish "between law enforcement reports prepared in a routine, non-adversarial setting, and those resulting from the arguably more subjective endeavor of investigating a crime and evaluating the results of that investigation. The former are admissible, while the latter are not." *United States v. Noria*, 945 F.3d 847, 853 (5th Cir. 2019) (internal citations and quotation marks omitted) (holding that Form I-213 immigration documents, like other immigration documents, are public records, even though they are prepared by immigration agents). The fact that a public record "may be used to support a later criminal prosecution does not change the essentially ministerial circumstances of its creation." *Id*. at 860.

As particularly relevant here, courts around the country have held that many of the immigration documents maintained in a defendant's A-file—including documents reflecting a

7

defendant's citizenship, biographical information, and contacts with immigration authorities—are public records under Rule 803(8) that may be offered at a defendant's criminal trial without implicating the Confrontation Clause. *See, e.g., United States v. Caraballo*, 595 F.3d 1214, 1226 (11th Cir. 2010) ("We have already held that immigration files contained in an A-File, a category into which the I-213 form falls, constitute admissible hearsay, because the 'admission of routinely and mechanically kept I.N.S. records, such as the I-194 form and warrants of deportation, does not violate Rule 803(8)(B).'"); *United States v. Torralba-Mendia*, 784 F.3d 652, 666 (9th Cir. 2015) ("We have repeatedly held that immigration documents contained in an alien's A-file are non-testimonial because they are 'not made in anticipation of litigation, and because [they are] simply a routine, objective cataloging of an unambiguous factual matter.'"); *United States v. Medrano*, 356 Fed. App'x 102, 209 n.7 (10th Cir. 2009) ("We agree with our sister circuits which have also held that immigration or A-File documents may be admissible as business records or public records." (citing cases)); *United States v. Hodulik*, 44 Fed. App'x 656, 662 (6th Cir. 2002) (finding that the Government properly sought admission of A-file documents under the public records hearsay exception); *Noria*, 945 F.3d at 856-57 (providing examples of A-file documents that are admissible under Rule 803(8) and noting that "[w]arrants of removal, removal orders, and records of prior deportations contain much of the same biographical information as I- 213s, and, like I-213s, they provide compelling evidence of alienage"); *United States v. Garcia*, 452 F.3d 36, 42 (1st Cir. 2006) (holding that a warrant of deportation from an A-file was properly admitted and did not violate the Confrontation Clause). The same is true of documents contained in the A-File relating to the immigration proceedings, including, as relevant here Notices to Appear. *See, e.g.*, *United States v. Albino-Leo*, 747 F.3d 1206, 1210-11 (9th Cir. 2014) (holding notices to appear non-testimonial).

8

And while the Second Circuit has yet to be presented with this question in a criminal case, it has unequivocally stated that immigration records in an A-file are the types of public records that fall within Rule 803(8). *See, e.g.*, *Felzcerek*, 75 F.3d at 116 (finding that a Form I-213 from an A-file "contain[s] guarantees of reliability and trustworthiness that are substantially equivalent to those required of documents admissible under Rule 803(8)"); *Punin v. Garland*, 108 F.4th 114, 125 (2d Cir. 2024) (same); *see also United States v. Lita*, 800 Fed. App'x 8, 10-11 (2d Cir. 2020) (holding that an A-file was properly authenticated as a public record through a USCIS custodian and affirming the district court's admission of a visa application maintained in the A-file).

### 3. Admissions of a Party Opponent and Adoptive Admissions

Federal Rule of Evidence 801(d)(2)(A) provides in relevant part that "[a] statement is not hearsay if . . . the statement is offered against an opposing party and was made by the party in an individual or representative capacity." Fed. R. Evid. 801(d)(2)(A); *see also United States v. Russo*, 302 F.3d 37, 43 (2d Cir. 2002) ("Statements made by the defendant may be introduced by the government in a criminal trial to prove the truth of the facts stated in them because they are admissions of an adverse party."). Moreover, statements made by a defendant are admissible under this exception even if the statement, on its face, is not incriminating. *See, e.g.*, *United States v. Gotti*, 457 F. Supp. 2d 395, 401-402 (S.D.N.Y. 2006) ("Cases explaining that an admission must be contrary to a position taken by the party at trial do so to distinguish Rule 801(d)(2)(A) from the more limited exception for statements against interest under Rule 804(b)(3), which must be against the declarant's interest at the time when made."). Likewise, under Rule 801(d)(2)(B), a statement is not hearsay if it is offered against a party and the party manifested that he adopted the statement or believed it to be true. *See* Fed. R. Evid. 801(d)(2)(B).

9

**B. Discussion**

As set forth above, immigration documents maintained in a defendant's A-file are generally admissible as public records under Rule 803(8) and need not be offered through a witness who personally prepared or witnessed those documents. Accordingly, the Government intends to offer certain categories of documents from the defendant's A-file through either a USCIS custodian or ICE agents familiar with the types of documents routinely prepared in connection with immigration matters and maintained in A-files. While the Government may seek to offer additional documents from the A-file depending on arguments advanced by the defense at trial, the Government respectfully requests from the Court a ruling in advance of trial regarding the admissibility of the below documents.[4]

*First*, the Government seeks to offer the Form I-862 notice to appear that was served on the defendant in connection with his pending removal proceeding.[5] The Form I-862, styled as a "Notice to Appear," is a document prepared by the Department of Homeland Security to advise an individual that he is "[i]n removal proceedings under [S]ection 240 of the Immigration and Nationality Act . . ." BP_000008, at 29.   In the defendant's case, his Form I-862—dated April 30, 2024 and signed by the defendant—specifically advised him that "[y]ou are an alien present in the United States who has not been admitted or paroled," that "[y]ou are not a citizen of the United States," and that he is a citizen of the Dominican Republic.   *Id*. The Form I-862 further ordered the defendant to "appear before an immigration judge of the United States Department of Justice" on September 4, 2025. *Id*. The form is particularly relevant as to Counts One and Two, which

---

[4] To the extent any of the below documents contain references to the defendant's criminal history or custodial status, the parties will confer on appropriate redactions.

[5] The Form I862 was produced to the defendant at Bates number BP_000008, pages 29-31.

charge the defendant with participation in a firearms trafficking conspiracy and possession of firearms by an illegal alien. The document, which is routine and required to be prepared by immigration officers in connection with removal proceedings, is of the kind that does not implicate the Confrontation Clause and may be admitted under Rule 803(8). *See, e.g., Albino-Lee*, 747 F.3d at 1210-11 (holding that Form I-862 notices to appear are admissible as public records and that "the mere fact that a Notice to Appear is prepared in anticipation of immigration proceedings is . . . irrelevant"); *Vasquez*, 2024 WL 3102248 at *11 (admitting notices to appear in a Section 1326 prosecution).

*Second*, the Government seeks to offer the Form I-213 Record of Deportable Alien in the defendant's A-file, which includes the defendant's name, date of birth, and citizenship.[6] A "Form I-213, or a Record of Deportable/Inadmissible Alien . . . is an official record prepared by immigration officials when initially processing a person suspected of being in the United States without lawful permission[.]" *Zuniga-Perez v. Sessions*, 897 F.3d 114, 119 n.1 (2d Cir. 2018). These forms routinely contain biographical information provided by the individual. *See Maldonado v. Holder*, 763 F.3d 155, 158 & n.1 (2d Cir. 2014) ("A Form I–213 is an official record routinely prepared by an [immigration officer] as a summary of information obtained at the time of the initial processing of an individual suspected of being an alien unlawfully present in the United States." (alteration in original)). As described above, the Second Circuit has stated that Form I-213s fall under the public records exception, and other courts routinely admit Form I-213s in immigration-related criminal proceedings. *See, e.g., Felzcerek*, 75 F.3d at 116 (finding that a Form I-213 from an A-file "contain[s] guarantees of reliability and trustworthiness that are

---

[6] The Form I-213 was produced to the defendant at Bates number BP_000008, pages 20-22.

substantially equivalent to those required of documents admissible under Rule 803(8)");
*Caraballo*, 595 F.3d at 1226 (holding that Form I-213 is admissible as a public record); *Noria*, 945
F.3d at 855 (holding that Form I-213s are not testimonial and may be admitted at criminal trials).

For the foregoing reasons, each of the categories of documents described above is
admissible under Rule 803(8). The documents also easily pass the Rule 403 balancing test. Their
probative value could not be higher—they are the official immigration records maintained by
USCIS for the defendant, which bear directly on elements of the charged offenses, namely,
alienage and the defendant's presence in the United States (Count Two) and his knowledge that
his own possession of a firearm constituted a felony (Count One). And there is little to no risk of
unfair prejudice because the documents concern the very immigration matters that are at issue in
this case. Accordingly, the A-file documents described above should be admitted at trial.

## II.     Evidence and Argument Concerning Personal Characteristics, Current Immigration Policy, and Punishment Should Be Precluded

The Court should preclude any evidence and argument unconnected to the issue of the
defendant's guilt. In particular, such evidence and arguments that are unrelated to guilt and are
highly prejudicial are those concerning (i) the defendant's personal characteristics and life in the
United States, or any other "good acts" evidence, (ii) current immigration policy and enforcement,
and (iii) punishment.

*First*, the Court should preclude any evidence or argument related to personal
characteristics, including the defendant's motivation to enter the United States and live in the
United States. For example, evidence that the defendant may have felt unsafe in another country
or that he may have romantic partners and children in the United States is irrelevant to whether he
has lawful status in the United States. Such evidence and argument are improper and have no
bearing on the defendant's guilt. Moreover, even if such evidence and argument had any probative

value (which they do not), that value would be substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. Indeed, presentation of such evidence and argument could improperly influence the jury by appealing to their sympathies or confuse and mislead the jury as to the issues that need to be decided in this case. Fed. R. Evid. 403, Advisory Committee's Note (noting that evidence is excludable if it has "an undue tendency to suggest decision on an improper basis").

Indeed, courts regularly preclude such evidence and argument. *See, e.g.*, *United States v. Battaglia*, No. 05 Cr. 774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged"); *United States v. Crown*, No. 99 Cr. 1044 (AGS), 2000 WL 709003, at *3 (S.D.N.Y. May 31, 2000) (precluding evidence regarding the defendant's motive to enter the United States on the basis that it was irrelevant to the immigration-related charges and would likely improperly appeal to the jury's sympathy); *United States v. Perez*, 459 F. App'x 191, 198 (3d Cir. 2012) (affirming trial court's preclusion of evidence regarding the defendant's "family and work life in the United States," noting that it is "unclear" how such evidence would be relevant to an immigration-related offense, and "even if [the defendant] could establish relevance, . . . this evidence poses an improper risk of jury nullification"). Accordingly, the defense should be precluded from introducing evidence of or making arguments concerning the defendant's personal circumstances. *See United States v. Harris*, 491 F.3d 440, 447 (D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man").

*Second*, the defense should be precluded from arguing or questioning witnesses about current immigration policies and enforcement. Such topics, which have recently dominated the

13

news cycle and concern individuals other than the defendant and the evidence in this case, would improperly invite the jury to reach a verdict based on factors beyond the evidence presented at trial. And while the Government anticipates requesting that the Court instruct the jury not to rely on sympathy or outside factors in reaching a verdict, there remains a significant risk that the presentation of such improper arguments may distract the jury from the evidence in the case and invite them to rely upon improper considerations in deciding this case.[7]

*Third*, any argument or questioning regarding potential punishment, including potential deportation, should be precluded. Where the jury has no role at sentencing—such as in this case—it "should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)).[8] The jury should not consider possible incarceratory sentences, nor should they be invited to speculate about potential collateral consequences, including deportation. This is so for good reason: Argument concerning punishment "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id.*

Accordingly, any evidence, questioning, or argument concerning the possible consequences the defendant may face as a result of this prosecution, or in connection with any administrative removal proceedings, should be precluded.

---

[7] Similarly, the Court should preclude any argument aimed at undermining the appropriateness of federal prosecution for the offense conduct. Such arguments are improper and would serve only to distract the jury from determining whether the Government has met is burden of proof to establish each of the elements of the charged crime.

[8] Indeed, the defendant faces a substantial potential sentence if convicted on all counts of the Superseding Indictment and even if the defendant is acquitted, the Government understands that he will still likely face administrative removal proceedings.

## <u>CONCLUSION</u>

For the reasons set forth above, the Government respectfully submits that its motions should be granted.

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York


By:    <u>/s/</u>                              
Ashley C. Nicolas
Brandon D. Harper
Ryan W. Allison
Assistant United States Attorneys


Dated:  June 6, 2025
        New York, New York